## COUNTY OF BENNINGTON,

### AT THE

### FEBRUARY TERM, 1883.

PRESENT :

HON. TIMOTHY P. REDFIELD, ⎫
HON. JONATHAN ROSS, ⎪
HON. H. HENRY POWERS, ⎬ ASSISTANT JUDGES.
HON. RUSSELL S. TAFT, ⎭

---

## A. G. POTTER *v.* JOHN T. DOOLEY.*

### [IN CHANCERY.]

*Deed.   Mistake in Recording.   Filing Deed.   Constructive Notice.*
*Tax   Title.*

In May, 1869, D. executed a mortgage on certain lands to secure his notes ; in November of the same year, the notes and mortgage were assigned to K. as security ; in November, 1872, D. executed a deed to the defendant, in which were these words, "*and an undivided half of the tract I purchased of*"—(D's mortgagee). In the record of the deed the words above quoted were omitted until a second record was made in 1879, while this suit was on trial, in which these words were included.   In1 876 K. re-assigned, after they were due, the notes and mortgage to his assignors, the original mortgagees, who on the same day assigned

---

*Heard February Term, 1881.

them to the orator. At the time the notes and mortgage were given, they were left with a third party and were not to be delivered until the land was cleared of incumbrances, and measured, and if it fell short the notes were to be reduced to an amount agreed on,—$4.00 per acre. After the assignment to the orator, through some misunderstanding, he obtained possession of the notes and mortgage, foreclosed, and the decree became absolute against D. The orator was without actual notice of the deed to the defendant. In a foreclosure proceeding, *Held,*

1. That the orator is entitled to a decree against the defendant ; that there was no constructive notice; that the filing of a deed is only the *incipient record;* and that when a deed has been recorded : nd t..ken from the town clerk's office, it is no p1rt of the files, and the record is decisive of equities.
2. That the decree concludes all equities of D. and of all claiming under him.
3. That the defendant c.innot stand on a tax title when the grand list of the town was not offered in evidence.
4. It is doubtful whether any one but D. could insist on the conditions of the contract as to measuring the land, &c. ; but his rights, and the rights of his grantees, are concluded by the decree.

PETITION to foreclose a mortgage in common form. Heard on the report of a special master, December Term, 1880, VEAZEY, Chancellor. Decree for the orator. It appeared that on the 10th day of May, 1869, Hazael Wiley, C. C. Wiley and George O. Wiley executed and delivered to one Peter Dooley a warranty deed of certain mountain lands, situated in Stamford, Vt., and partly in Mass. ; that on the same day the said Peter Dooley executed and delivered to the grantors in the first named conveyance a mortgage deed of said premises, to secure the payment of six promissory notes described therein ; that, also, at the same time the said Wileys gave to said Dooley the following writing :

" It is understood and agreed by the undersigned that the notes given by Peter Dooley to Hazael Wiley and bearing even date with this instrument, shall remain in the hands of B. F. Robinson, Esq., for safe keeping, and are not to be used for the benefit of said Wileys until the land is measured out and quantity of acres ascertained ; and if said land falls short of the required number of acres to amount to the sum set forth in said notes at four dollars per acre, the said notes are to be reduced in that proportion, and increased if it shall overrun in like proportion ; and also pay up all incumbrances, and make good any defect in said title to said Dooley, his heirs or assigns."

It also appeared that on the 27th day of November, 1869, Hazael Wiley assigned the said notes and mortgage to one Ketchum as collateral security for what he owed him ; that C. C. and George O. Wiley ratified the assignment; and that, in 1872 and in 1875, the said Ketchum and Dooley entered into contracts

in writing by which the former agreed to take lumber on the said land in payment for the notes. The orator claimed the contract of May 10th, 1869, had been performed by the Wileys; the defendant, that it had not; and the orator also claimed that Ketchum had no authority to make the two last contracts as he only held the notes for security. But under the decision of the court what was done under these contracts is not material. After the notes were due in 1876 Ketchum reassigned the notes and mortgage, and at the same time they were assigned to the orator. The master found:

" The orator then went to B. F. Robinson, in whose keeping the four notes still remained, and told said Robinson said mortgage had been assigned him; and that he was informed the conditions upon which the notes were deposited had been fulfilled, and that he was entitled to receive them. Some conversation was had in relation to the terms on which the notes were left, the details of which did not fully appear; after which Robinson delivered said notes to the orator. Robinson testifies that the orator wanted to copy the notes, and that he let him take them for that purpose. The orator testifies that he told Robinson he would make copies of the notes and give him, and that he did so. I find that the orator asked for, and received, said notes without making any misrepresentations as to what had been done or told him in relation thereto, and without making any stipulation limiting his possession, control or use of them; but that Mr. Robinson misunderstood the matter, and supposed that after copying, the notes themselves would be returned. Peter Dooley knew nothing of the transaction, and did not assent to the delivery of said notes.

An action was brought by the orator against Peter Dooley to foreclose said mortgage in Massachusetts, and was entered at a term of court held in June, 1876; and in October of the same year a decree thereon was obtained, the defendant appearing but not making answer thereto. The orator also brought his petition against Peter Dooley and another to forclose said mortgage in Vermont; and the same was entered at the December Term of the Bennington county Court of Chancery in 1876; the defendant Dooley appeared and filed an affidavit of defence; the case was thereupon continued, but no answer was filed, and decree upon said petition was obtained at the June Term following. On the 25th day of November, 1872, Peter Dooley executed and delivered to his son, John T. Dooley, the defendant, a deed of certain lands in Stamford; said deed was received for record at the town

clerk's office in Stamford on the same day ; and I find that it then
contained the words ' and an undivided half of the tract I pur-
chased of Hazael Wiley,' as they now appear in said deed.  Said
deed was thereupon recorded in the land records of said town,
the words above quoted not appearing.    It did not appear that
the orator or his assignors had any knowledge of said deed other
than such as was derived from the record, until after the foreclosure
proceedings above set forth.  Said deed was again recorded in the
town clerk's office in Stamford on the 11th of December, 1879,
after its introduction in evidence before the master, but previous
to the conclusion of the hearing, the record then made corres-
ponding with the original.  On the 15th day of April, 1876, the
constable of Stamford sold for taxes to one A. W. Wilmarth, of
Stamford, the interest of Peter and John Dooley in certain lands
in said town, under a warrant and upon certain proceedings.    No
grand list of the town of Stamford, or documentary evidence
bearing upon said sale, was shown in evidence, other than the
papers contained in said last named exhibit.  On the 26th day of
April, 1877, said officer executed and delivered to said Wilmarth
a conveyance of the lands thus sold ;  on the 17th day of Decem-
ber, 1877, said Wilmarth quit-claimed to John T. Dooley, the·
defendant, all the right and title acquired by virtue of said con-
stable's deed."


*H. W. Brigham* and *C. J. Parkhurst*, for the defendant.

The deed was properly lodged in the clerk's office for record,
and although not fully transcribed upon the records, was legally
recorded on that day, as no enrollment was necessary to invest the
title.  *Ferris* v. *Smith*, 24 Vt. 27.

The defendant's said deed is an absolute conveyance, and the
omissions therein are clearly clerical errors and it is apparent
from the face of the instrument what the corrections should be ;
hence it is the duty of the court to correct them by construction.
*Richmond* v. *Woodard*, 32 Vt. 833 ;  *Wood* v. *Cochran*, 39 Vt.
544 ; *Goodrich* v. *Perkins*, 39 Vt. 598.


*A. Potter*, for the orator.

The defendant cannot question the orator's right to the notes ;
because, first, he is no party to the agreement of May 10th, 1869 ;
and second, no one but Dooley could raise the question ;   and it

has been judicially determined against him in the foreclosure suits. The tax sale was void.     48 Vt. 648 ; 47 Vt. 333 ;   18 Vt. 470 ; 13 Vt. 609 ;   21 Vt. 481.

The opinion of the court was delivered by

REDFIELD, J.     John Dooley executed a mortgage on the 10th day of May, 1869, to Hazael Wiley, C. C. Wiley and George O. Wiley, of certain lands in Stamford in this State, and a portion of them was situate across the State line in Massachusetts.   After the notes had become due and paid in part, the mortgage and notes were assigned and transferred to the orator.   Before said assignment on the 25th of November, 1872, Peter Dooley conveyed by deed certain lands in Stamford to the defendant, and in said deed were written the words, " and an undivided half of the tract I purchased of Hazael Wiley."   The deed was recorded in the town clerk's office of Stamford, and in the record the words above quoted were omitted.

After the assignment to the orator, and after the title had become absolute in the orator against John Dooley by foreclosure of this mortgage, and while this suit was on trial, said deed to the defendant was again recorded, and the omitted words included in the record.   It is not claimed that the orator had actual notice that the defendant's deed covered any portion of the land included in the orator's mortgage.

I.   The decree against John Dooley concludes *him* of all equity in the premises, and we think all equities of those who claim under John Dooley by an unrecorded deed, of which the orator had no notice.

It is claimed that defendant's deed was placed on *file* for *record* which was constructive notice to the orator.   It is true while the deed *remained on file* it is notice for a reasonable time, until the deed may be spread on the records.   But after the deed is recorded, though erroneously, and the deed and its filing taken from the office of the clerk, the *record* is the only thing *in the office* that can give notice to those who may be dealing with the title.   And no scrutiny of the records and files in the town clerk's office would

indicate that the defendant had any claim or title to the land included in the orator's mortgages. The orator, having extinguished the title of John Dooley by a judicial decree against him, stands with the same rights he would if that title had been extinguished by a deed from John Dooley. The filing of a deed for record is the *incipient* record, and operative from the date of filing; but after the full record is made the deed is no longer a part of the files but belongs to the party.

II. The sale of the land by the constable of Stamford to Wilmarth for taxes is invalid. No grand list of the town of Stamford was offered in evidence, or shown in the case. The grand list of the several towns is the basis of taxation, and an indispensable requisite to justify the sale of property for taxes; even if the listers are not under the sanction of an oath in making up the list and the valuation of property, the grand list is invalid, and the taxes assessed thereon are void. *Houghton* v. *Hall*, 47 Vt. 333; *Tunbridge* v. *Smith*, 48 Vt. 648. There are other obvious omissions of statute requirements in the sale of this land for taxes. The collector's deed, therefore, to Wilmarth conveyed no title.

III. The defendant contends that the orator is without right by reason of the contract of May 10th, 1869, between the original parties to the mortgage in regard to delivering the mortgage as an escrow, until the land was measured and the incumbrances cleared away. It might be doubtful whether any one but Peter Dooley could insist upon the conditions of said contract; and it has been judicially determined as to him, that the conditions of said contracts have been complied with; and as we have before said, all equities arising from an unrecorded deed or other contract with Peter Dooley, the mortgagor, are concluded by the decree against him.

The result is that the decree of the Court of Chancery is affirmed, and cause remanded.